## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| STERLING DESIGN AND CONSTRUCTION, LLC, and CHRISTOPHER MARTIN, <br><br> Plaintiffs and Counter Defendants, <br><br> v. <br><br> SAGE DESIGN AND CONSTRUCTION, LLC, SAGE DEVELOPMENT AND CONSTRUCTION INCORPORATED, and TAMMY SAGE, <br><br> Defendants and Counter Plaintiff. | No. 20-cv-05549 <br><br> Judge John F. Kness |

## MEMORANDUM OPINION & ORDER

Christopher Martin and Tammy Sage[1] maintained a personal relationship for approximately 12 years. After Martin acquired Sterling Design and Construction, LLC in 2016, Sterling hired Sage as a Designer and Product Manager.

---

[1] In their Answer, Defendants raise three counterclaims against Plaintiffs, making Defendants "Counter-Plaintiffs" and Plaintiffs "Counter-Defendants." (*See* Dkt. 9.) Throughout this Opinion, for clarity and simplicity, the Court will refer to Plaintiffs Sterling Design and Construction, LLC and Christopher Martin exclusively as "Plaintiffs," and Defendants Sage Design and Construction, LLC, Sage Development and Construction Incorporated, and Tammy Sage exclusively as "Defendants."

In 2020, following a fracture in the couple's personal relationship, the professional relationship—between Martin and Sterling, on one hand, and Sage on the other—quickly deteriorated. While Martin was staying in Michigan, Sage allegedly looted Sterling by, among other things, writing checks to herself, spending company money on personal expenses, stealing company property (including two computers), and petitioning a state court (under false pretenses) to bar Sterling from returning home or dealing with Sterling's business assets. Sage also allegedly created her own companies—Sage Design and Construction, LLC and Sage Development and Construction Incorporated—and poached all of Sterling's (now-former) employees and some of its customers.

Plaintiffs brought the present seven-count lawsuit in September 2020 (Dkt. 1)[2] and, two months later, moved for an order of replevin under Illinois law (Dkt. 5). In their Answer, Defendants raised four affirmative defenses and brought three counterclaims. (Dkt. 9.) Plaintiffs moved to dismiss the counterclaims (Dkt. 14) and to strike the affirmative defenses (Dkt. 16). In August 2021, Plaintiffs moved to compel Defendants to respond to various outstanding discovery requests. (Dkt. 41.) For the following reasons:

- Plaintiffs' motion to dismiss (Dkt. 14) is granted in part and denied in part. Sage's Counterclaims I and III are dismissed without prejudice. Plaintiffs'

---

[2] The Court has federal question jurisdiction, under 28 U.S.C. § 1331, over Plaintiffs' Computer Fraud and Abuse Act and Lanham Act claims, and supplemental jurisdiction, under 28 U.S.C. § 1367, over Plaintiffs' state-law claims.

motion to dismiss is denied as to Sage's breach-of-contract counterclaim (Counterclaim II).

- Plaintiffs' motion to strike (Dkt. 16) is granted in part and denied in part. The motion is granted as to Defendants' fair use and implied license affirmative defenses; it is denied as to Defendants' permission, consent, or acquiescence and unclean hands affirmative defenses. (Plaintiffs' related motion to supplement the record in support of their motion to strike (Dkt. 37) is also granted.)

- Plaintiffs' motion for an order of replevin (Dkt. 5) is denied without prejudice. Once fact discovery is complete, Plaintiffs are invited to file a renewed post-discovery motion on which the Court may hold a hearing.

- Plaintiffs' motion to compel (Dkt. 41) is granted.

## I. BACKGROUND

### A. Factual Background

In 2008, Martin and Sage began dating. (Dkt. 1 ¶ 25.) They started cohabitating in 2012. (*Id.*) In 2016, Martin purchased Sterling Design and Construction, LLC ("Sterling"). (*Id.* ¶ 20.) Sterling is "engaged in remodeling customer homes in the Chicago area, and 'flipping' homes, *i.e.*, purchasing a property, renovating it, and then reselling it for a profit." (*Id.* ¶ 21.) After Martin acquired the company, Sterling employed Sage as a "Designer and Project Manager," in which capacity she "was primarily responsible for interacting with Sterling's customers,

including developing new customers, and maintaining existing customer relationships." (*Id.* ¶¶ 26-27.)

In March 2020, the relationship between Martin and Sage deteriorated. The parties' accounts of the breakup differ slightly. According to Plaintiffs, "Sage and Martin experienced significant problems with their romantic relationship" and Martin left home "on April 2 to stay in Michigan to give them time to decide if they would remain romantically involved." (*Id.* ¶ 28.) Sage offers more detail, alleging in her counterclaims that "[o]n March 2, and again on March 26, 2020, Martin committed multiple acts of domestic violence against Sage" and that she "obtained an Emergency Order of Protection ('EOP') against Martin." (Dkt. 9 at 31.)[3]

While Martin was away, according to Plaintiffs, Sage took Sterling's money and business assets. Among other things, Sage wrote checks to herself, spent company money on personal expenses, and "absconded with Sterling's business assets" (including Sterling's computers, phones, and other equipment) and personal property belonging to Martin. (Dkt. 1 ¶¶ 7, 30-32, 35, 47.) Sage also allegedly filed a petition in state court, in which she "falsely claimed that she—and not Martin— owned Sterling," and convinced the state court to bar Martin from coming home or dealing with Sterling's business assets. (*Id.* ¶¶ 32-34.) (Plaintiffs' counsel subsequently "informed the [state] court that Sage took all, or nearly all, of Sterling's

---

[3] The parties are presently involved in other civil and criminal suits related to these incidents. According to Defendants, "Martin was arrested, charged with multiple counts of domestic battery and causing bodily harm, and is currently being prosecuted criminally by the Lake County State's Attorney's Office." (Dkt. 9 at 8.) And, as made clear in Plaintiffs' Sur-Reply, Sage brought suit against Martin in state court for battery. (*See generally* Dkt. 37.)

business assets" and, after determining that Sage was not the owner of Sterling, the state court "ordered Sage to immediately return what she took." (*Id.* ¶ 42.)

Around the same time, Sage registered two new Defendant entities with the Illinois Secretary of State—Sage Design and Construction, LLC and Sage Development and Construction, Inc.—and created "Sage Design and Construction," the name of which Plaintiffs allege Sage chose "specifically because of [its] confusing similarity to Sterling's name." (*Id.* ¶¶ 36-37) (The similarities between the new Defendant companies and Sterling form the basis of Plaintiffs' claims under the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act (UDTPA).) Sage convinced all six of Sterling's other employees to leave Sterling and work for Sage Design and Construction. (*Id.* ¶¶ 51-52.) Defendants "took over" Plaintiffs' active jobs, including by directing Sterling's existing customers to cancel their contracts with Sterling and to initiate contracts with Defendants to complete the work instead. (*Id.* ¶¶ 55-68.)

## B. Procedural Background

On September 18, 2020, Plaintiffs sued Defendants for violating the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030 *et seq.* (Count I), violating the Lanham Act, 15 U.S.C. § 1125 *et seq.* (Count II), violating the Illinois Uniform Deceptive Trade Practices Act (UDTPA), 815 ILCS 510/1 *et seq.* (Count III), tortiously interfering with Plaintiffs' contracts (Count IV), abuse of process (Count V), and conversion (Count VII). (*Id.* ¶¶ 69-107.) On November 9, 2020—shortly after filing the case, and before the completion of fact discovery—Plaintiffs moved for an order of replevin. (Dkt. 5.)

In their Answer, Defendants asserted four affirmative defenses (fair use; implied license; permission, consent, and/or acquiescence; and unclean hands) and Sage asserted three counterclaims, alleging breach of fiduciary duty (Counterclaim I), breach of contract (Counterclaim II), and intentional infliction of emotional distress (Counterclaim III). (Dkt. 9 at 27-36.) Sage alleges that Plaintiffs terminated her and retroactively cancelled her health insurance (which was covered by Sterling), ensuring that "Sage's [insurance] claims for the injuries [Martin] inflicted on her would not be covered under Sterling's health insurance policy." (*Id.* at 31-32.) Plaintiffs moved to dismiss the counterclaims (Dkt. 14) and to strike Defendants' affirmative defenses (Dkt. 16).[4] On August 25, 2021, Plaintiffs moved to compel Defendants to respond to various outstanding discovery requests. (Dkt. 41.) Each of these pending motions is addressed below.

## II.    DISCUSSION

### A.    Plaintiffs' Motion to Dismiss Sage's Counterclaims (Dkt. 14)

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a

---

[4] On July 31, 2021, Plaintiffs moved to supplement their motion to strike with a state court ruling that Plaintiffs argue is germane to their motion to strike Defendants' unclean-hands affirmative defense. (Dkt. 37.)

right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc*., 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678-79.

Sage asserts three counterclaims against Plaintiffs for breach of fiduciary duty (Counterclaim I), breach of contract (Counterclaim II), and intentional infliction of emotional distress (IIED) (Counterclaim III). (Dkt. 9 at 32-36.) Plaintiffs seek to dismiss all three counterclaims.

### 1.     *Breach of Fiduciary Duty (Counterclaim I)*

In Counterclaim I, Sage alleges that Martin "was in a position of trust with respect to that portion of Sage's compensation that Sterling was obligated to allocate to health insurance premiums on Sage's behalf" and that Martin "abused his position of trust and breached his fiduciary duties to Sage when, without any legal justification, he canceled Sage's health insurance coverage." (Dkt. 9 at 33.)

To prevail on a breach-of-fiduciary-duty counterclaim, Sage must show "the existence of a fiduciary duty, breach of that duty, and damages proximately resulting from that breach." *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 748 (7th Cir. 2006) (citing *Neade v. Portes,* 739 N.E.2d 496, 502 (Ill. 2000)). In turn, "[a] fiduciary duty arises either as a matter of law or by special circumstances." *Id.*

(citation omitted); *see nClosures Inc. v. Block & Co.*, 770 F.3d 598, 603 (7th Cir. 2014). A "business or contractual relationship alone does not create a fiduciary duty." *Est. of Brown v. Arc Music Grp.*, 523 F. App'x 407, 410 (7th Cir. 2013) (nonprecedential disposition); *see Am. Guardian Warranty Servs., Inc. v. Auto Prot. All., LLC*, No. 15-cv-9670, 2017 WL 4585573, at *2 (N.D. Ill. Apr. 20, 2017) (holding that "contractual obligation" did not create a fiduciary duty).

Sage's allegations are insufficient to state a plausible claim of a fiduciary duty. Sage claims that Martin's "position of trust" with respect to Sage's compensation and health insurance created a fiduciary relationship. (Dkt. 9 at 33.) And, in her Response, Sage insists that "whether under a traditional agent-principal theory or simply on the basis of the trust and power Sage vested in Martin in relation to her health insurance," her allegations support the existence of such a fiduciary relationship. (Dkt. 23 at 4.) But Sage's alleged relationship with Martin, at least as elucidated in her counterclaim, is precisely the type of ordinary "business or contractual relationship" that the Seventh Circuit has rejected as the basis of a fiduciary duty. *See Est. of Brown*, 523 F. App'x at 410.

The cases relied on by Sage, (*see* Dkt. 23 at 4), do not support her contention that she (an employee) and Martin (the owner of Sage's employer) had a fiduciary relationship. This is not a case like *Burdett v. Miller* in which "the disparity between the parties in knowledge or power relevant to the performance of an undertaking is so vast that it is a reasonable inference that had the parties in advance negotiated expressly over the issue they would have agreed that the agent owed the principal

the high duty." 957 F.2d 1375, 1381 (7th Cir. 1992). And the other cases cited by Sage are similarly unavailing. *See Breedlove v. Museum of Sci. & Indus.*, No. 16-cv-5861, 2017 WL 56641, at \*2 (N.D. Ill. Jan. 5, 2017) (finding plausible fiduciary relationship between museum and a party who loaned objects to the museum for display); *Sur v. Glidden-Durkee, a div. of S.C.M. Corp.*, 681 F.2d 490, 493 (7th Cir. 1982) (explaining that, "[u]nder Indiana law, an agent of an insured owes the insured a duty of good faith and due diligence in obtaining adequate insurance for him"). The relations "between a guardian and his minor ward, or a lawyer and his client," *Burdett*, 957 F.2d at 1381, between a museum and the owners of objects on display at the museum, *Breedlove*, 2017 WL 56641, at \*2, or between an agent and an insured party, under a separate state's laws, *Sur*, 681 F.2d at 493—the examples in those other cases—are different in kind from the contractual/business relationship between Plaintiffs and Sage at issue here.

Accordingly, Sage's Counterclaim I is dismissed without prejudice.

### 2. Breach of Contract (Counterclaim II)

In Counterclaim II, Sage alleges that she and Sterling "were parties to a valid and enforceable contract of employment" and that Martin "caused Sterling to breach its contractual obligation to Sage . . . by canceling the [healthcare policy]" retroactively. (Dkt. 9 at 34.) Although not explicit in the counterclaim, Sage's Response suggests that the alleged contract was "oral" rather than in writing. (*See* Dkt. 23 at 7-8.)

To state a claim for breach of an employment contract, Sage must "establish: (1) an offer and acceptance; (2) consideration; (3) the terms of the contract; (4) plaintiff's performance of all required contractual conditions; (5) defendant's breach of the terms of the contract; and (6) damages resulting from the breach." *Toll Processing Servs., LLC v. Kastalon, Inc.*, No. 12-cv-10058, 2014 WL 1379676, at *2 (N.D. Ill. Apr. 8, 2014) (citing *Penzell v. Taylor,* 579 N.E.2d 956, 961 (Ill. App. Ct. 1991)). Sage need not include the "exact terms of the alleged oral agreement" in the complaint to survive Plaintiffs' motion to dismiss. *Id.* (quoting *Miller v. Harris*, 985 N.E.2d 671, 681 (Ill. App. Ct. 2013)).

Sage plausibly alleges the existence of a contract that Plaintiffs breached. Indeed, the general contours of Sage's oral contact are referenced in Plaintiff's complaint. (*See, e.g.*, Dkt. 1 ¶ 26 ("Sage was employed by the remodeling business that Martin bought when he purchased it in 2016. Sage continued working for the business and was employed by Sterling as a Designer and Project Manager").) Although Sage has not pleaded her breach-of-contract counterclaim with great specificity, she has at least "raise[d] [her] right to relief above the speculative level." *Twombly*, 550 U.S. at 555.[5] Accordingly, the motion to dismiss Counterclaim II is denied.

---

[5] Plaintiffs are generally correct that "Illinois does not allow punitive and emotional distress damages for breaches of contract." (Dkt. 15 at 5 (quoting *Stafford v. Puro*, 63 F.3d 1436, 1443 (7th Cir. 1995).) But, at least under some circumstances, "compensation for emotional distress is allowed where the breach of contract was wanton or reckless and caused bodily harm or where the defendant had reason to know, when the contract was made, that its breach would cause more than pecuniary loss." *Woodard v. Chi. Bd. of Educ*, No. 00 C 5515, 2001 WL 1631892, at *3 (N.D. Ill. Dec. 18, 2001). Because the principal consideration at this stage is whether the counterclaims present a "short, plain, and plausible factual

3. *Intentional Infliction of Emotional Distress (Counterclaim III)*

To bring a counterclaim for intentional infliction of emotional distress (IIED), Sage must allege "(1) conduct that is truly extreme and outrageous; (2) that [the plaintiff] intended the conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress." *Totten v. Benedictine Univ.*, No. 20-cv-6107, 2021 WL 3290926, at *11 (N.D. Ill. Aug. 2, 2021) (citing *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016)).

Merely "characterizing emotional distress as severe is not sufficient," and Sage must make "specific, and detailed [allegations] beyond what is normally considered permissible in pleading a tort action." *Schwartz v. Home Depot U.S.A., Inc.*, No. 00-cv-5282, 2000 WL 1780245, at *5 (N.D. Ill. Dec. 4, 2000) (quoting *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 684-85 (Ill. App. Ct. 1999)). Emotional injuries such as "fright, horror, grief, shame, humiliation, [and] worry" are "alone not actionable." *Welsh*, 713 N.E.2d at 684 (cleaned up).

Sage alleges that Martin's conduct—including "maliciously canceling Sage's health insurance, retroactive to April 1, 2020, knowing that she had claims for coverage resulting from Martin's own physical abuse"—caused Sage to suffer severe emotional distress. (Dkt. 9 at 36.) Elsewhere, Sage alleges that she suffered "anxiety" as a result of Martin's conduct. (*Id.* at 35.) But general allegations of "anxiety" are

---

narrative that conveys a story that holds together," *Kaminski*, 23 F.4th at 777, the Court will reserve its evaluation of what remedies would be available to Plaintiffs and Defendants for a later time.

not enough, *see Welsh*, 713 N.E.2d at 684, and Sage does not allege other specific emotional injuries. Accordingly, Sage fails to allege a plausible counterclaim for IIED, and Counterclaim III is therefore dismissed without prejudice.

*     *     *

For the foregoing reasons, Plaintiffs' motion to dismiss (Dkt. 14) is granted in part and denied in part. Sage's Counterclaims I and III are dismissed without prejudice. Plaintiffs' motion to dismiss is denied as to Sage's breach-of-contract counterclaim (Counterclaim II).

### B.    Plaintiffs' Motion to Strike (Dkt. 16)

In their Answer, Defendants raise four affirmative defenses: fair use; implied license; permission, consent, and/or acquiescence; and unclean hands. (Dkt. 9 at 27-30.) Plaintiffs moved to strike all Defendants' affirmative defenses (Dkt. 16), arguing that "[t]he first three [defenses] simply recite the elements of the defense and, therefore, are not properly pleaded," "the fair use defense is not a proper affirmative defense because it denies the allegations of the Complaint," and Defendants' unclean hands defense "has no application here." (Dkt. 17 at 1-2.)[6]

Under Rule 12 of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent,

---

[6] On July 31, 2021, Plaintiffs moved to supplement their motion to strike with information about, and a ruling in, a separate action between the parties in state court. (Dkt. 37.) The Court set a briefing schedule on that motion. (Dkt. 39.) But Defendants did not—and still have not—responded to Plaintiffs' motion. When a party fails to respond to a motion, that failure "results in a waiver of any response." *Sorenson v. Rozlin Fin. Grp.*, No. 15-cv-50088, 2015 WL 6955494, at *2 (N.D. Ill. Nov. 10, 2015); *see Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). Plaintiffs could not have included the supplemental material in their earlier filings because the final brief on their motion to strike before this Court was filed in

or scandalous matter." Fed. R. Civ. P. 12(f). But, even if such motions are technically appropriate and well-founded,

> seeking to strike affirmative defenses is rarely consistent with the goal of Rule 1, which is to 'secure the just, speedy, and inexpensive determination of every action and proceeding.' Generally, motions to strike affirmative defenses are disfavored because they 'potentially serve only to delay.' Besides delay, moving to strike affirmative defenses risks wasting scarce judicial resources 'by requiring judges to engage in busywork and judicial editing without addressing the merits of a party's claim.' This is because the standard for striking an affirmative defense is high; 'affirmative defenses will be stricken only when they are insufficient on the face of the pleadings.' Moreover, even if a court strikes an affirmative defense, leave to amend is 'freely given,' unless there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the plaintiff, or where the amendment would be futile.

*Dace v. Chi. Pub. Sch.*, No. 19-cv-6819, 2020 WL 1861671, at *2 (N.D. Ill. Mar. 18, 2020) (citations omitted).

To survive a motion to strike, "an affirmative defense must be adequately pleaded [to] withstand a Rule 12(b)(6) challenge." *Soos & Assocs., Inc. v. Five Guys Enters., LLC*, 425 F. Supp. 3d 1004, 1010 (N.D. Ill. 2019). Although the Seventh Circuit has not resolved whether such motions must meet the pleading standard as explained by the Supreme Court in *Twombly* and *Iqbal*, other judges in this District have endorsed the majority view (of other circuits) that the *Twombly/Iqbal* standard governs. *See, e.g.*, *Dace*, 2020 WL 1861671, at *4; *Soos & Assocs.*, 425 F. Supp. 3d at 1010 n.2. Applying the majority view, Defendants' affirmative defenses need not be

---

February 2021, and the state court did not resolve the motion described in the supplemental response until May 2021. Because consideration of the supplemental materials may assist the Court in its evaluation of the pending motion to strike, Plaintiffs' motion (Dkt. 37) is granted.

"as detailed as a complaint (or a counterclaim)." *Behn v. Kiewit Infrastructure Co.*, No. 17-cv-5241, 2018 WL 5776293, at *1 (N.D. Ill. Nov. 2, 2018) (quoting *Dorsey v. Ghosh*, 2015 WL 3524911, at *4 (N.D. Ill. 2015)). They must simply "provide sufficient notice of the defense asserted" and may not "assert[] boilerplate defenses as mere placeholders without any apparent factual basis." *Id.* (quotation omitted).

### 1. *Defendants' Fair Use and Implied License Affirmative Defenses*

Defendants' first two affirmative defenses contain no supporting facts that would put Plaintiffs on "notice of the defense[s] asserted." *Dorsey*, 2015 WL 3524911, at *4. In Defendants' fair use affirmative defense, they "assert that any use of the [terms alleged by Plaintiffs to be the source of a purported likelihood of confusion] is a fair use under federal and common law." (Dkt. 9 at 27.)[7] In their implied license affirmative defense, Defendants assert that, "[t]o the extent Defendants have ever made use of any of the terms alleged by Plaintiffs to be the source of a purported likelihood of confusion, such use has been pursuant to an implied license, arising out of Sage's employment duties for Sterling." (*Id.*) Those assertions contain no details about what led Defendants to conclude that their conduct was fair use or why Defendants believed there was an implied license. It is not even clear against which of Plaintiffs' claims the two defenses are asserted; although Defendants' fair use defense references "Plaintiffs' claim of unfair competition," it is not clear whether that

---

[7] It is not clear from Defendants' Answer which "terms alleged by Plaintiffs" (Dkt. 9 at 27) are at issue.

refers to Plaintiffs' federal Lanham Act claim (Count II), state UDTPA claim (Count III), or some other claim altogether.

In their Response, Defendants argue that Plaintiffs' "unfair competition claim"—to which Defendants' first three affirmative defenses apparently apply—is itself "devoid of any factual detail relating to any likelihood of confusion" (an element of that claim). (Dkt. 24 at 3.) But that argument does not address the sufficiency of Defendants' (rather than Plaintiffs') pleadings. If Defendants had trouble discerning the factual basis of Plaintiffs' claim(s), Defendants could have moved for a more definite statement under Rule 12(e); and, if Defendants thought Plaintiffs had not pleaded a plausible claim, Defendants could have moved to dismiss that claim under Rule 12(b)(6). Merely arguing that Plaintiffs' insufficiencies (an issue which the Court does not reach here) excuse Defendants' factually-insufficient affirmative defenses, without more, is not compelling.

In short, Defendants' first two defenses are "without any apparent factual basis," *Dorsey*, 2015 WL 3524911, at *4, and are accordingly stricken without prejudice.

### 2. *Defendants' Affirmative Defense of Permission, Consent, or Acquiescence*

In their third affirmative defense, Defendants assert that any violation of the CFAA was done "with the permission, consent and/or acquiescence, express and/or implied, of Plaintiffs." (Dkt. 9 at 27.) In support, Defendants allege that "Martin expressly authorized Sage to use funds in Sterling's business account to cover her costs of relocating from the parties' former joint residence." (*Id.* at 27-28.) Although

light on facts, Defendants' allegations put Plaintiffs on notice of at least some of the factual bases that Defendants intend to rely upon to contest Plaintiffs' claims. This sufficiently puts Plaintiffs on "notice of the defense asserted" asserted against them. *Dorsey*, 2015 WL 3524911, at *4.

Plaintiffs argue that Defendants "implausibly allege[] that Plaintiffs gave Sage permission to remove all of Sterling's computers from its office, copy the contents thereof to use in her new competing business, and delete the original data so Sterling could no longer conduct its own business." (Dkt. 17 at 2.) According to Plaintiffs, that defense fails because it is merely a denial of Plaintiffs' "allegation that Sage *did not* have permission," and "[a] defense that relies on denying the plaintiff's allegations, like this one, is not an affirmative defense." (*Id.* (citing *Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 872 (7th Cir. 2012)).) But, as explained above, Defendants do more than merely "contest the validity" of Plaintiffs' claim, *see Wingforge*, 691 F.3d at 872; Defendants allege the existence of facts supporting Defendants' account of the events underlying Plaintiffs' suit.

Plaintiffs' motion to strike Defendants' affirmative defenses is therefore denied as to Plaintiffs' third affirmative defense.

### 3. *Defendants' Unclean Hands Affirmative Defense*

Defendants' final affirmative defense is the most complex to assess. In essence, Defendants assert that, because (1) Martin "committed multiple acts of domestic violence against Sage," (2) "[f]rom Sterling's inception, Martin has done next to nothing to further Sterling's home remodeling, construction[,] and design business,"

16

and (3) in retaliation for Sage's willingness to testify against Martin in a criminal case, Martin "undertook a reprehensible course of vengeful, retributive conduct," Plaintiffs have "unclean hands." (Dkt. 9 at 28-30.)

The doctrine of unclean hands works to bar equitable relief if such relief "would give the plaintiff a wrongful gain." *Scheiber v. Dolby Lab'ys, Inc.*, 293 F.3d 1014, 1021 (7th Cir. 2002); *see also Jackson v. Bd. of Election Comm'rs of City of Chi.*, 975 N.E.2d 583, 590 (Ill. 2012) (interpreting unclean hands doctrine similarly under state law). Properly applied, "the maxim is to prevent a wrongdoer from enjoying the fruits of his transgression." *Packers Trading Co. v. CFTC*, 972 F.2d 144, 149 (7th Cir. 1992) (cleaned up).

But the unclean hands doctrine does not bar equitable relief where plaintiffs engage merely in *any* wrongful conduct. More narrowly, the doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945); *see Packers Trading Co.*, 972 F.2d at 149. In other words, the doctrine bars recovery only where the dirt on both pairs of hands is sufficiently related. *See Redbox Automated Retail, LLC v. Xpress Retail LLC*, No. 17-cv-5596, 2018 WL 950098, at *4 (N.D. Ill. Feb. 20, 2018) ("For the purposes of an unclean hands defense, a plaintiff's misdeed is considered unrelated to the litigation's subject matter 'when the right for which the plaintiff seeks protection in the injunction suit did not accrue to him because of the misdeed.'" (quoting Restatement (Second) of Torts § 940, cmt. c (Am. L. Inst. 1979))).

Plaintiffs argue that Defendants' use of the unclean hands doctrine "is legally defective because the alleged misconduct (physical injury during a domestic dispute) did not give rise to Plaintiffs' claims in this action." (Dkt. 17 at 3.) But drawing all reasonable inferences in Defendants' favor in assessing Plaintiffs' motion to strike, *see Redbox Automated Retail, LLC*, 2018 WL 950098, at *4, striking Defendants' unclean hands defense at this stage would be premature. To the extent that the "unclean" conduct alleged by Defendants (described above) relates to the end of Martin and Sage's relationship, it is plausible that conduct relates to the conduct underlying the suit. Plaintiffs' complaint even references "a terrible fight on March 26, 2020," although the parties' characterizations of that fight differ. Ultimately, whether the conduct alleged in the complaint is sufficiently related to the conduct alleged in Defendants' affirmative defense will turn on facts that are not presently developed in the record.

In their Sur-Reply, Plaintiffs argue separately that, under the doctrine of judicial estoppel, this Court should strike Defendants' unclean hands defense because Sage brought a separate action for battery in Illinois state court that arises out of the "same alleged incidents." (Dkt. 37 at 6.)[8] Plaintiffs argue that Defendants have advanced contradictory positions in two separate fora: here, Defendants argue that there is "a causative nexus between Martin's misconduct and his claims seeking the

---

[8] Page references to Plaintiffs' Sur-Reply (which they label a "Supplemental Reply") are to the PDF page numbers.

return of property" (Dkt. 24 at 6) while, in the state court case, Sage (who is a plaintiff in that case) takes the opposite stance:

> The claims and counterclaim in the federal case—essentially a trademark and unfair competition case—arise out the parties' business dealings and their employment relationship. None of those claims arises from, or involves proof of, the assault and battery claims that are the sole subject of this case.

(Dkt. 37 at 6).

Again, however, the factual record in this case is not sufficiently developed to assess whether Defendants' positions are contradictory and, thus, whether Defendants' unclean hands defense should be stricken in this case. The assertions regarding Martin's alleged violence against Sage—that "[o]n March 2, and again on March 26, 2020, Martin committed multiple acts of domestic violence against Sage" (Dkt. 9 at 28)—apparently form the basis of Sage's state court suit against Martin (*see, e.g.*, Dkt. 37 at 12). But Defendants' unclean hands defense before this Court arises out of other conduct as well, including, for example, Martin's having "done next to nothing to further Sterling's home remodeling, construction and design business" and Martin's "vengeful, retributive conduct" against Sage. (Dkt. 9 at 28-29.)

Further development of the factual record in this case may demonstrate that some aspects of Defendants' unclean hands defense should be stricken. At this time, assuming the truth of Defendants' factual allegations and drawing all reasonable inferences in Defendants' favor, Defendants have done enough in their Answer to put Plaintiffs on "notice of the defense asserted." *Dorsey*, 2015 WL 3524911, at *4.

Accordingly, Plaintiffs' motion to strike the unclean hands affirmative defense is denied.

*      *      *

Plaintiffs' motion to strike (Dkt. 16) is granted in part and denied in part. Specifically, the motion is granted as to Defendants' fair use and implied license affirmative defenses; and the motion is denied as to Defendants' permission, consent, or acquiescence and unclean hands affirmative defenses.

### C.    Plaintiffs' Motion for Order of Replevin (Dkt. 5)

Shortly after bringing this suit, and before Defendants answered the complaint, Plaintiffs moved for entry of an order of replevin. (Dkt. 5.) Rule 64 of the Federal Rules of Civil Procedure empowers federal courts to employ "every remedy [that is available] under the law of the state where the court is located . . . to secure satisfaction of . . . potential judgment[s]." Fed. R. Civ. P. 64(a). Plaintiffs thus appeal to Illinois's replevin statute, which provides that "[w]henever any goods or chattels have been wrongfully distrained, or otherwise wrongfully taken or are wrongfully detained, an action of replevin may be brought for the recovery of such goods or chattels, by the owner or person entitled to their possession." 735 ILCS 5/19-101; (*see* Dkt. 6 at 5).

To prevail on a replevin claim, the claimant "must demonstrate 'that (1) she is the owner of the relevant property or lawfully entitled to its possession; (2) the property at issue is wrongfully detained by the defendant; [and] (3) the property is not subject to any tax, assessment, or fine.' " *CSX Transp., Inc. v. Five Star Enter. of*

20

*Ill., Inc.*, No. 16-cv-9833, 2018 WL 6735705, at *6 (N.D. Ill. Dec. 24, 2018) (quoting *Priddle v. Malanis*, No. 12-cv-5831, 2016 WL 8094590, at *10 (N.D. Ill. Sept. 14, 2016)).

Plaintiffs' motion for replevin—which they filed less than two months after bringing this suit—was premature. Under Illinois law, "[n]o order for replevin may be entered nor may property be seized pursuant to an order for replevin prior to [] notice and hearing." 735 ILCS 5/19-105; *see also Fuentes v. Shevin,* 407 U.S. 67, 96 (1972) (explaining that Due Process requires "the right to a prior opportunity to be heard before chattels are taken from their possessor"). And other courts in this District have declined to grant replevin "based solely on a contested, pre-discovery motion." *Firestone Fin. Corp. v. King Amusements, Inc.*, No. 12-cv-04519, 2013 WL 1286665, at *8 (N.D. Ill. Mar. 28, 2013); *see Signature Fin. LLC v. Auto Trans Grp. Inc.*, No. 17-cv-9058, 2018 WL 1914557, at *4 (N.D. Ill. Apr. 23, 2018). Both parties "must have the benefit of discovery to determine whether [the plaintiff] can present a prima facie case that it is entitled to an order of replevin." *Firestone Fin. Corp.*, 2013 WL 1286665, at *8. Based on this legal framework, the Court denies Plaintiffs' premature motion for an order of replevin (Dkt. 5). This ruling is without prejudice to Plaintiff's later renewal of the motion once the factual record has been more fully developed.

### D. Plaintiffs' Motion to Compel (Dkt. 41)

Plaintiffs have also filed a motion to compel Defendants to respond to their discovery requests. (Dkt. 41.)[9] Rule 37 of the Federal Rules of Civil Procedure explains that "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id.* And despite the liberal breadth of the discovery rules, "the proponent of a motion to compel discovery [still] bears the initial burden of proving that the information sought is relevant." *West v. Miller*, No. 05-cv-4977, 2006 WL 2349988, at *2 (N.D. Ill. Aug. 11, 2006) (cleaned up). If the discovery appears relevant, "the party objecting to the discovery request bears the burden of showing why that request is improper." *Trading Techs. Intern., Inc. v. eSpeed, Inc.*, No. 04-cv-5312, 2005 WL 1300778, at *1 (N.D. Ill. Apr. 28, 2005) (quotation omitted).

Plaintiffs describe their efforts to convince Defendants to comply with their requests, including consenting to an extension of time for Defendants to comply. (Dkt. 41 at 2.) Despite Plaintiffs' repeated efforts to obtain discovery, Defendants apparently did not—and still have not, as best the Court can tell—respond to the discovery requests. (*Id.*) Moreover, the discovery requests appear relevant. (*See* Dkt.

---

[9] Although the parties agreed to a briefing schedule on Plaintiffs' motion to compel (Dkt. 42), and the Court set a briefing schedule (Dkt. 43), Defendants did not file any response. Defendants' failure to respond thus constitutes "a waiver of any response." *Sorenson*, 2015 WL 6955494, at *2.

41 at 5-28.) In the absence of any response from Defendants, the Court is left with no basis for concluding that the requests are "improper."

Accordingly, Plaintiffs' motion to compel (Dkt. 41) is granted. Defendants are ordered to serve written responses to Plaintiffs' discovery requests within 7 days and to produce all responsive documents within 28 days.

## III. CONCLUSION

To sum up:

- Plaintiffs' motion to dismiss (Dkt. 14) is granted in part and denied in part. Sage's Counterclaims I and III are dismissed without prejudice. Plaintiffs' motion to dismiss is denied as to Sage's breach-of-contract counterclaim (Counterclaim II).

- Plaintiffs' motion to strike (Dkt. 16) is granted in part and denied in part. The motion is granted as to Defendants' fair use and implied license affirmative defenses; it is denied as to Defendants' permission, consent, or acquiescence and unclean hands affirmative defenses. Plaintiffs' related motion to supplement the record in support of their motion to strike (Dkt. 37) is granted.

- Plaintiffs' motion for an order of replevin (Dkt. 5) is denied without prejudice.

- Plaintiffs' motion to compel (Dkt. 41) is granted. Defendants are ordered to serve written responses to Plaintiffs' discovery requests within 7 days, and to produce all responsive documents within 28 days, of this order.

If Defendants wish to amend their counterclaims or affirmative defenses, they must do so on or before April 1, 2022. If Defendants do not submit an amended

pleading by the deadline, the dismissal of Sage's counterclaims and striking of Defendants' affirmative defenses will convert to being with prejudice.

SO ORDERED in No. 20-cv-05549.

Date: March 16, 2022

_____
JOHN F. KNESS
United States District Judge